UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In Re:                                   ]
                                         ]
        FRIENDSHIP HOUSE                  ]      Case No. 08-00434
        ASSOCIATION, INC.                 ]      (Chapter 11)
                                         ]
                    Debtor.               ]

## OBJECTION OF UIP III INVEST, LLC TO DEBTOR'S FEBRUARY 4, 2010 EMERGENCY SUPPLEMENTAL MOTION FOR APPROVAL OF SALE OF REALTY, FREE AND CLEAR

UIP III INVEST, LLC, by undersigned counsel, hereby objects to the relief requested in the Debtor's February 4, 2010 Emergency Supplemental Motion for Approval of Sale of Realty, Free and Clear (the "Motion") and in support of its objection states follows:

1.      On February 5, 2010, The Adams National Bank ("Adams"), as assignor, transferred to UIP III Invest, LLC, as assignee (and transferee for purposes other than security), all right, title and interest of Adams in the Deeds of Trust and loan documents (the "Loan Documents") for the Loans to the Debtor, secured by the Debtor's property at 619 D Street, S.E., Washington, D.C. (the "Property"), which are the basis for the secured claims of Adams in this proceeding (Claims 6 and 12).

2.      A Transfer of Claim Other Than for Security, and Notice thereof, were filed with this Court on February 9, 2010.

3.      UIP III Invest, LLC has replaced Adams in this proceeding with respect to its secured claims. As of January 7, 2010, the amount due to Adams under its Loans to the Debtor was $2,057,860.67. See Exhibit One attached to this Objection. Further interest and charges

under the Loan Documents have accrued since that time. UIP III Invest, LLC is proceeding to give Notice of Foreclosure to the Debtor, and will proceed with foreclosure at the earliest time possible.

4.    On September 24, 2009, this Court entered a Consent Order which approved a sale of the Property first to Sonya Sweek and, failing that, to the Foundation to Support Animal Protection, d/b/a PETA. Document 115. Both the proposed sale to Sweek and to PETA did not go to closing and were terminated. On November 11, 2009, Adams gave Notice (Document 122) that the Sweek Contract was terminated, which triggered the PETA Contract. As of December 29, 2009, the PETA Contract (Document 134) had failed and was terminated. Exhibit Two attached hereto. The Debtor and its counsel were both given the letter terminating the PETA contract, on December 29, 2009. See Exhibit Two.

5.    Therefore, the automatic stay was terminated on December 29, 2009, pursuant to the Consent Order, which provides (at 5):

> "ORDERED that in the event any of the time being of the essence requirements imposed on Sweek or PETA hereunder, as the case may be, are not timely performed by them, respectively, then, without further order of this Court or any notice or action by any party, the stay imposed by 11 U.S.C. § 362 is terminated with respect to the Property as to Adams. ..."

6.    UIP III Invest, LLC proceeded to purchase the Loan Documents from Adams in reliance upon the foregoing facts.

7.    The Consent Order also provided (at 5):

> "ORDERED that in the event the stay is terminated as provided for and described in the immediately preceding paragraph of this Order, nothing in this Order shall prevent the Debtor from presenting to Adams a contract from another qualified purchaser (other than PETA or Sweek or any person or entity related or affiliated with either of them) for all cash, without any contingencies, for a price that exceeds the Adams loan balance as of the closing date in such contract, and provided such contract has

2

a closing date that will occur before the thirtieth (30th) day
following the termination of the stay. ..."

8.      Thus, at the time the Consent Order was entered on September 24, 2009, the

Debtor had agreed and knew that, if it presented another (a third) purchase contract for the

Property after the termination of the automatic stay, it had to meet the very specific requirements

stated in the above-quoted portion of the Consent Order.

9.      This Court has held that a Consent Order will be enforced, and will not be

modified, "to readjust the consent order in its application to the conditions that existed at its

making," and that "[t]he parties negotiated ... terms and ought to be required to abide by them

except in unique circumstances." In Re 1330 19[th] Street Corporation, 101 B.R. 397 (Bkrptcy Ct.

D.C. 1989). This is particularly so, where, as here, the rights of UIP III Invest, LLC "... vested

on the faith of the [consent order]." Id.

10.     The Motion and the purported contract fail to satisfy any of the specific

requirements of the Consent Order regarding presentation of yet a third proposed contract, after

the termination of the stay:

(a)     The Consent Order requires presentation of the signed contract to Adams
(now UIP III Invest, LLC, as assignee of Adams). No signed copy of the
proposed contract has been submitted to either Adams or to UIP III Invest,
LLC, or for that matter to this Court.[1] This Court is being asked to
approve this proposed contract sight unseen.

(b)     The Consent Order requires a "qualified purchaser". The Motion contains
no information regarding the purchaser.

(c)     The Consent Order requires that the purchase be for all cash, without any
contingencies. The terms of payment of the purchase price are unknown.
What is known is that the proposed contract would contain a contingency
for at least a feasibility study and that the proposed purchaser would have

---

[1] The Debtor was advised on February 1, 2010 to contact UIP III Invest, LLC's counsel, but no contact was made.
See Exhibit Three hereto.

the right to terminate at the end of the feasibility period. See paragraph 4 of Exhibit Three attached hereto, page 3.

(d)    The Consent Order requires that any proposed contract "has a closing date that will occur before the thirtieth (30[th]) day following the termination of the stay. . . ." The automatic stay was terminated on December 29, 2009. Exhibit Two attached hereto. Any proposed contract was required to close by January 28, 2010. The 30-day closing deadline expired before the Motion was even filed. Moreover, it is unknown when the proposed contract referred to in the Motion would close, because the Motion does not state any closing date and fails to provide the purported contract. Thus, the purported contract has not been shown to meet this closing requirement of the Consent Order.

Ironically, the Debtor alleges as the basis for its "emergency motion" a need to close quickly, but never says when that closing will be.

(e)    The Consent Order requires that any proposed contract must be for a price that exceeds the Adams loan balance as of the closing date in such contract. The Motion fails to attach any proposed contract, fails to say what the closing date would be, and fails to show that the purchase price as of closing exceeds the Adams loan balance.[2]

11.    The proposed contract which the Motion seeks to have this Court approve sight unseen does not satisfy the requirements of the Consent Order, to which all parties agreed, and does not even suggest that it satisfied any of the criteria of Rule 60(b)(5) as enunciated by this Court in In Re 1330 19th Street Corporation, supra.

12.    If indeed the proffered purchaser desires to purchase the Property, it may bid its purported $2.6 million at the foreclosure sale. However, any further delay in proceeding with that foreclosure sale would be contrary to both the facts and the applicable law.

---

[2] The Debtor suggests that "there may still be a surplus for the Debtor to use ..." Motion at 3, emphasis added. No calculation is proffered for this dubious statement. For example, this assertion by the Debtor fails to mention that there is approximately $200,000.00 in unpaid taxes and water liens on the Property, and another $81,234.62 projected for First Half 2010 Real Estate Taxes. Exhibit Four attached hereto. The Motion also fails to account for broker's fees, recordation and transfer taxes and other closing costs.

4

For the foregoing reasons, the Motion should be denied.

Respectfully submitted,

February 9, 2010

/s/ Gregory T. DuMont
Vincent Mark J. Policy, Esquire (DC Bar #204701)
Gregory T. DuMont (DC Bar #455385)
Greenstein, DeLorme & Luchs, P.C.
1620 Connecticut Avenue, N.W., Suite 900
Washington, D.C.  20036
Telephone: (202) 452-1400
Facsimile:  (202) 452-1410
Email:      vmp@gdllaw.com

Counsel for UIP III Invest, LLC

368978/1

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served by electronic means via the

Courts ECF system to those parties as requested and by first class mail, postage prepaid, on

February 9, 2010, upon the following:

> Jeffrey M. Sherman, Esquire
> Jackson & Campbell, P.C.
> 1120 20th Street, N.W.
> Suite 300 South
> Washington, DC 20036
> (202) 457-1613
> Attorneys for Debtor
> emoyer@jackscamp.com
>
> Dennis J. Early, Esq.
> Office of the United States Trustee
> 115 South Union Street
> Alexandria, VA 22314
>
> Robert Greenberg, Esq.
> Friedlander, Misler
> 1101 Seventeenth Street, N.W.
> Suite 700
> Washington, DC 20036
> rgreenberg@dclawfirm.com
>
> Nancy J. Alper, Esq.
> Nancy.alper@dc.gov
>
> Linda S. Broyhill, Esq.
> Reed Smith LLP
> 3110 Fairview Park Drive
> Suite 1400
> Falls Church, VA 22042
>
> Brian L. Kass, Esq.
> Kass, Mitch & Kass, PLLC
> 1050 17th Street, N.W., Suite 1100
> Washington, D.C. 20036

/s/ Gregory T. DuMont
Gregory T. DuMont

368978/1